RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
SHREVEPORT, LOUISIANA
DATE 2/15/07

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

UNITED STATES

versus                                          CRIMINAL NO. 03-50038-01
                                                JUDGE TOM STAGG
CHARLES KESSEE

### SENTENCING MEMORANDUM

Following remand from the Fifth Circuit Court of Appeals, Charles Kessee, Jr. ("Kessee") pled guilty to possession with intent to distribute a mixture or substance containing a detectable amount of hydrochloride (powder cocaine), a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The presentence report ("PSR") listed Kessee's base offense level as a thirty-eight, which included a two point enhancement pursuant to U.S.S.G. § 3B1.1(c) based on the assertion that Kessee was "an organizer, leader, manager, or supervisor" of the criminal activity, in addition to a three point reduction for acceptance of responsibility. The offense level of thirty-eight was also arrived at in part through a "relevant conduct" calculation, in which 4.47 kilograms of crack

cocaine were attributed to Kessee.[1] The 4.47 kilogram crack cocaine amount was comprised of drug quantities from offenses that occurred as early as 1998 and 1999, whereas the offense of conviction-- for powder cocaine-- took place in 2002.

Kessee filed objections to the PSR, arguing that the 1998-1999 crack cocaine offenses should not be included as relevant conduct. At the sentencing hearing, the government presented the testimony of four co-conspirators to support the crack cocaine calculations. Troubled by the relevant conduct dispute, specifically the span of time between the 1998-1999 crack cocaine offenses and the 2002 conviction for powder cocaine, the court directed the parties to file briefs on the subject of relevant conduct. The sentencing hearing was continued until today, February 15, 2007.

In the time since the November 30th hearing, the court has had the opportunity to review in detail U.S.S.G. § 1B1.3. Section 1B1.3(a)(2) provides that relevant conduct includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." Application note 9 defines the terms "common scheme or plan" and "same course of conduct." To constitute a common scheme or plan, two or more offenses "must be substantially connected to each other by at least one common factor, such as

---

[1] The PSR also attributed 45.133 kilograms of powder cocaine, but it did not use that amount in calculating Kessee's offense level. The sheer amount of the crack cocaine, alone, placed Kessee at the maximum offense level under the guidelines.

common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3, application note 9(A). To constitute the same course of conduct, offenses must be "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3, application note 9(B). Factors to be considered in this determination include the "degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. When one of the above factors is absent, a stronger presence of at least one of the other factors is required." Id.

The government contends that the crack cocaine offenses in 1998 and 1999 should be included as relevant conduct, despite the time span between those offenses and the offense of conviction in 2002. First, the government argues that the crack cocaine offenses and the powder cocaine offense in 2002 are part of a common scheme or plan, in that they "have a common purpose, the distribution of crack and powder cocaine in Shreveport, Louisiana." Record Document 155 at 14. Alternatively, the government asserts that the offenses are part of the same course of conduct, such that they constitute a single episode, spree or ongoing series of offenses. Specifically, the government maintains that the defendant's course of conduct was to "purchase large amounts of cocaine to later distribute either as

powder or crack." Record Document 155 at 15. As to the regularity of the offenses, the government argues that Kessee was "regularly obtaining large amounts of both powder and crack cocaine and distributing them to multiple buyers in Shreveport," as the witnesses testified at the sentencing hearing. Although the evidence highlights at least an eighteen month gap[2] between the crack cocaine offenses and the powder cocaine distribution, the government, citing <u>United States v. Edwards</u>, 133 Fed. App'x. 960, 963 (5th Cir. 2005), states that drug offenses occurring two years prior to the offense of conviction are not automatically deemed irrelevant.

Kessee, on the other hand, argues that the crack cocaine offenses cannot be included as relevant conduct for several reasons. First, the offenses involve two different drugs: the offense of conviction involved powder cocaine while the earlier offenses involved crack cocaine. Second, he maintains that the offenses are separated by at least two years (2000 and 2001). Third, the accomplices or co-conspirators involved in the 1998-1999 drug offenses were not involved in the 2002 offense of conviction. The Fifth Circuit instructs that " offenses which occur within one year of the offense of conviction may be considered relevant conduct for

---

[2] The PSR alleges that Kessee engaged in drug distribution in early 2000, but concedes that there is no evidence of drug activity during 2001. Kessee, on the other hand, asserts that there is at least a two year time span between his drug activity, with no evidence of drug activity during either 2000 or 2001.

sentencing." United States v. Ocana, 204 F.3d 585, 590 (5th Cir. 2000). However, "[i]n two recent cases this court has found that the time interval between offenses is too remote to consider the extraneous offense to be relevant conduct. In both of those cases the offense of conviction took place more than a year in time from the offense in question." Id. In United States v. Miller, 179 F.3d 961, 966 n. 10 (5th Cir. 1999), the court held that a drug offense transpiring twenty-one months prior to the offense of conviction was too remote, and in United States v. Wall, 180 F.3d 641, 645-46 (5th Cir. 1999), the court found that drug offenses separated by four and five years lacked temporal proximity. As the court explained in United States v. Shepard, "[w]hen the conduct alleged to be relevant is temporally remote from the conduct underlying the conviction, and the relevance of the extraneous conduct depends primarily on its similarity to the conviction . . . [i]t is not enough that the extraneous conduct merely amounts to the same offense." 59 F.3d 1240, *5 (5th Cir. 1995). "Rather, the district court must consider whether specific similarities exist between the offense of conviction and the temporally remote conduct." Id.

Here, the transactions do not share common accomplices, common suppliers, or common buyers. They do not even share a common purpose, aside from the fact that they both involved the distribution of drugs. However, as the Fifth Circuit has explained, if "[t]he only similarity is the fact that the offenses involved drugs," that

is simply insufficient. United States v. Booker, 334 F.3d 406, 415 (5th Cir. 2003) (citing United States v. Miller, 179 F.3d 961, 967 (5th Cir. 1999)) (internal marks omitted). Therefore, the evidence simply fails to demonstrate that the offenses constitute a common scheme or plan.

Likewise, the evidence falls short of proving the transactions comprise the same course of conduct. Kessee's earlier drug activities are temporally remote from the 2002 offense of conviction, and the evidence fails to prove that his involvement in cocaine distribution was continuous. Indeed, there is a significant time gap in the evidence which allows one to believe that Kessee ceased his drug distribution activities in 1999 (or perhaps early 2000) and then commenced a new, separate distribution offense in 2002. Further, as previously discussed, the offenses lack similarity, in that they involve different accomplices, different buyers, different suppliers, and a different type of drug. Finally, there is no proof of regularity, as required by the guidelines. In short, the evidence fails to establish that the offenses are part of the same course of conduct.

The crack cocaine offenses shall not be included in the drug calculation as they do not constitute relevant conduct under the guidelines. For the same reasons and due to the same evidentiary defects, the powder cocaine offenses pre-dating 2002 shall not be considered as relevant conduct. However, the 2002-2003 offense

involving nine kilograms of powder cocaine shall be included in the drug quantity calculation, for it easily satisfies the relevant conduct criteria.

Accordingly, the court adopts the factual findings contained in the PSR, with the exception of the drug quantity calculation. The quantity of drugs that is properly attributed to Kessee as relevant conduct is the nine kilograms of powder cocaine occurring during 2002 and 2003. This finding establishes a base offense level of thirty-two, as there were more than five but less than fifteen kilograms of powder cocaine.

The remainder of Kessee's objections to the PSR are overruled.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 15th day of February, 2007.

JUDGE TOM STAGG